FILED
2014 Aug-20 AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARTH TOBLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:13-cv-1095-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.  Introduction

The plaintiff, Garth Tobler, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB").  Mr. Tobler timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Tobler was fifty-two years old at the time of the Administrative Law Judge's ("ALJ's") decision, considered by 20 C.F.R. § 404.1563(d) to be a "person closely approaching advanced age." (Doc. 12, p. 4). Mr. Tobler has a post-graduate degree in divinity, and his past relevant work experience is as a chaplain and pastor. (*Id.*) Mr. Tobler claims that he became disabled on February 28, 2009,[1] due to symptoms and

---

[1]   February 28, 2009, is claimant's amended alleged onset date; the original alleged onset date

limitations related to hydrocephalus, attention deficit disorder, depression, anxiety, and stenosis of the back. (*Id.*)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).   If he or she is, the claimant is not disabled and the evaluation stops.   *Id.*   If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).   If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.   *Id.* If they do not, a determination of the claimant's residual functional capacity will be

---

was June 10, 1998.   (Tr. at 63).

2

made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled. *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Tobler met the insured status requirements of the Social Security Act through September 30, 2013.

(Tr. at 10).[2]  He further determined that Mr. Tobler has not engaged in substantial gainful activity since the amended alleged onset of his disability in February 2009. (*Id.*) According to the ALJ, Plaintiff has somatoform disorder, which is considered "severe" based on the requirements set forth in the regulations.  (*Id.*)  However, he found that the impairment neither meets nor medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 11).  The ALJ did not find Mr. Tobler's allegations to be supported by his history, and he determined that he has the residual functional capacity to "perform a full range of work at all exertional levels but with the following non-exertional limitations: No greater than moderate difficulties in maintaining concentration, persistence, or pace."  (Tr. at 13-14).

According to the ALJ, Mr. Tobler is able to perform his past relevant work as a pastor.  (Tr. at 15).  He determined that the Plaintiff has "performed [his work as a pastor] long enough to obtain the skilled [sic] required to adequately perform this work."  (*Id.*)  The ALJ concluded his findings by stating that the Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 28, 2009, through the date of this decision." (*Id.*)

---

[2]  Page references are to the page number assigned in the bound administrative record, not page numbers within a particular transcript or exhibit.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.   *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached."   *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir.

5

1987).   Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."   *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## III. Discussion

### A.   Legal Standards and Substantial Evidence

The court is under an obligation to "scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)(citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).   "Substantial evidence is more than a scintilla, but less than a preponderance."   *Bloodsworth v. Heckler*, 703 F.2d 1223, 1239 (11th Cir. 1983).   It is

6

such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed 2d 842 (1971).   The Plaintiff takes the position that "the decision of the Commissioner is not supported by substantial evidence."   (Doc. 12, p. 2).

At step two of his analysis, the ALJ determined that Mr. Tobler suffered from the severe impairment of a somatoform disorder.   (Tr. at 10).   The ALJ based this conclusion exclusively on the testimony of Dr. Alfred Jonas, a psychiatric specialist and testifying medical expert who reviewed Mr. Tobler's medical records.   (Tr. at 27).   Dr. Jonas did not treat or examine Mr. Tobler, or even meet him in person.   Dr. Jonas testified as follows regarding his suspicion that Mr. Tobler suffers from a somatoform disorder:

> So I think on the surface of it, I would say that it would appear as if [Mr. Tobler] did not have any severe psychiatric or non-psychiatric problems. But there is one other way to look at this record, and that is to think in terms of the possibility that he is essentially preoccupied with his symptoms.   And in that case, we could be thinking about something like a somatoform disorder.   And that is probably where I would look in terms of a diagnosable condition.

(Tr. at 30).   In reaching that conclusion, Dr. Jonas rejected all of the other physical and psychiatric impairments claimed by the plaintiff, despite evidence from multiple treating physicians and psychologists.

The description of a somatoform disorder used in the hearing and the ALJ's opinion was found in listing 12.07A Subparagraph 3 and describes the disorder as the "[u]nrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has serious disease or injury." (Tr. at 39). The ALJ's determination that Mr. Tobler suffers from a somatoform disorder is not supported by objective medical evidence, but only the speculation of Dr. Jonas.[3] There is no mention of a somatoform disorder in the medical records submitted in this case by any of the psychiatrists or psychologists who treated the plaintiff and were most familiar with him. Neither Mr. Tobler's medical doctors nor psychiatric doctors, of which there are several, ever asserted the opinion that Mr. Tobler's symptoms may be a product of a somatoform disorder, that Mr. Tobler is "preoccupied" with his symptoms,

---

[3]   Dr. Jonas's testimony on this point was the following:

So it's really not made clear from the record that he actually has the functional problems of which he complains. So I think on the surface of it, I would say that it would appear as if he did not have any severe psychiatric or non-psychiatric problems. But there is on other way to look at this record, and that is to think in terms of the possibility that he is essentially preoccupied with his symptoms. And in that case, we would be thinking about something like a somatoform disorder. And that is probably where I would look in terms of a diagnosable condition. There are some other conditions that are diagnosed in the record. There certainly is the old hydrocephalus and the present [sic] of the shunt.

(Tr. at 30). The court finds this testimony to be speculative and conjectural, not a *substantial* basis for rejecting the evidence from plaintiff's treating physicians, psychiatrists, and psychologists.

or that the symptoms are not as severe as Mr. Tobler alleged.   The first mention of a somatoform disorder or anything similar is made by a medical expert called to testify by the ALJ, Dr. Jonas, at the supplemental ALJ hearing in September 2011.   (Tr. at 30). Accordingly, this court cannot find that the ALJ's determination that Mr. Tobler suffers only from the severe impairment of a somatoform disorder is supported by *substantial* evidence.   The only evidence of it is mere conjecture by Dr. Jonas.[4]   Indeed, at the

---

[4]   The conjectural nature of Dr. Jonas's opinion is further confirmed at several points in his testimony.   After examining the plaintiff's work and pay pattern for several years prior to applying for disability, Dr. Jonas stated:

> Well, this is a very, very peculiar pattern of earnings, where he goes from nothing to well above SGA; to nothing, well above SGA.   And I would – *if I were to try to evaluate his situation better than I can now*, I would want to know what that's all about.   *And I would be curious to know whether this* [is] *somatic preoccupation*.

(Tr. at 42) (emphasis supplied).   Thereafter, Dr. Jonas began questioning the plaintiff indirectly through the ALJ, seeking an explanation for why plaintiff was able to work during some years prior to the alleged onset date.   But when the plaintiff attempted to explain that the combination of all of his medical conditions and the medication he must take for them made him unemployable, the ALJ cut him off, as follows:

| [Claimant] | Thinking on that, not thinking up an excuse or any of that, the things are – |
|---|---|
| ALJ | He's really at a loss, doctor.   He's just struggling to kind of come up with something, but I don't think he's [INAUDIBLE] – |
| CLMT | -- conditions taken all together make it impossible for me to hold a job – |
| ALJ | All right, we're going to have to wrap it up – |
| CLMT | Okay. |
| ALJ | -- because I think we're impinging on the doctor – |

(Tr. at 47).

9

conclusion of Dr. Jonas's testimony, he ultimately *declined* to state an opinion.   When the ALJ asked Dr. Jonas "can I have your call on this [plaintiff's condition]," he commented about some of the treating physicians, but then said, "So I don't want to – I don't want to just try to resolve it by guessing."   (Tr. at 49).   By refusing to guess, Dr. Jonas acknowledged that he was only speculating that plaintiff may suffer only from a somatoform disorder.   This is not a substantial basis for rejecting the evidence of the treating physicians.

Beyond failing to support his determination with substantial evidence, the ALJ applied an incorrect legal standard in evaluating Dr. Jonas's testimony in relation to the reports and medical records from Mr. Tobler's treating physicians.   Although the ALJ discusses in his opinion why he finds the opinions of Dr. Pitts, Dr. Echols, and Dr. Kahn[5] unreliable, he did so after expressing doubt about the credibility of all treating physicians.   When the plaintiff's attorney asked Dr. Jonas whether he agreed that treating physicians would be a better source of information about the plaintiff's condition, the ALJ interrupted, saying:

> Well, this is an ongoing question, doctor.   When you deal with claimants and claimant's counsel, they always push the treating physician, and they always say, well, that person's only a consultative.   And I know what the law is about giving the benefit to the treating, *but I always feel --- and I felt this*

---

[5]   The ALJ discusses only the report from Dr. Kahn's consultative physical exam, conducted on December 30, 2009.   (Tr. at 14).

10

> *when I tried cases --- that a person who was impartial has a lot of relevance to me and*
> *weight as opposed to someone who's partial like persons who have been treating a long*
> *time.* Now I may be in the minority there, but I think there's merit to
> somebody like yourself.   He's not your patient.   You're giving your call
> as best you can, and you're totally impartial.   People who treat for a long
> period of time develop relationships, and I don't know if they have the
> same degree of impartiality.

(Tr. at 50).   Under Eleventh Circuit authority, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).   By immediately downgrading the credibility of treating-physician evidence simply because it came from a treating physician, the ALJ improperly failed to give the treating physician evidence offered by plaintiff the proper degree of credibility required under Eleventh Circuit authority.

Moreover, the ALJ barely (if at all) acknowledged the other doctors who provided medical treatment to the plaintiff over several years.   The ALJ mentions only one note written in 2009 by Dr. Zenko Hrynkiw, the Plaintiff's neurologist, in which Dr. Hrynkiw noted that Mr. Tobler was doing well and that he denied headaches or dizziness and had a normal neurological examination.   Dr. Hrynkiw has provided treatment for Mr. Tobler since 1998, when his hydrocephalus first was diagnosed. Although the ALJ points to a single treatment note, he fails to take into account other

treatment notes by Dr. Hrynkiw showing that plaintiff suffered "Left-sided sensorineural hearing loss, presumably related to hydrocephalus" in May 2006 (Tr. at 554); a "three-week history of headaches" in June 2007 (Tr. at 552); and "headaches, dizziness and unsteadiness" in January 2009 (Tr. at 549).[6]   Although the ALJ is not required to mention every piece of evidence provided, that the ALJ cherry picks only one treatment note out of a treatment record spanning more than a decade indicates a failure to properly examine and credit the plaintiff's treating physicians.

In determining that Mr. Tobler had only the severe mental impairment of a somatoform disorder, the ALJ summarily disregarded, in favor of the testimony of Dr. Jonas, the medical records from almost all of the doctors who treated Mr. Tobler for physiological conditions.   This had the effect of undermining the severity of plaintiff's physical impairments by reducing them to a mere somatic disorder.   This is not the correct legal standard.   A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).   "Good cause" exists for an ALJ not to give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was

---

[6]   All of these dates predate the filing of the claim for disability benefits on April 6, 2009.

conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record). The ALJ did not identify good cause for disregarding the medical records from the Plaintiff's treating physicians. In fact, most of the medical records submitted as evidence in this case were not mentioned at all in the ALJ's opinion.

The ALJ plainly did not apply the correct legal standard when determining whether the Plaintiff's severe impairment or combination of impairments met or equaled those found in the listings. During the hearing, the ALJ told Dr. Jonas, "I'm just going to rely on you, doctor, all right. If [the Plaintiff's impairment] is [listing] 12.07(3) and it satisfies at least two of the B requirements, please let me know, and we'll just end it there." (Tr. at 40). Dr. Jonas replied, "[the impairment] does not." (*Id.*) The decision of whether Mr. Tobler's impairments met or equaled a listing was not Dr. Jonas's to make, and the failure of the ALJ to consider *all* of the evidence related to that question is a failure to apply the correct legal standard to the analysis of the evidence.

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are

administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c). The ALJ seems to have wholly substituted Dr. Jonas's opinion for his own. This is not an appropriate legal conclusion and, in practice, undermines the purpose of evaluation of claims by ALJs. Accordingly, Mr. Tobler's claim is due to be remanded for further scrutiny of the record.

### B. Severe and Nonsevere Impairments

As previously mentioned, the ALJ determined that Mr. Tobler suffered from the severe impairment of a somatoform disorder. The plaintiff, however, brought his claim for DIB on the basis of symptoms relating to both mental and physical impairments. (Doc. 12, p. 4). Mr. Tobler listed the following impairments on his Disability Report: depression; anxiety; hypertension; arthritis in the ankles, knees, hips, back, wrists, and elbows; sleep apnea; hydrocephalus; arrhythmia-tachycardia; stenosis in the lower back; bunions; psoriasis; spastic colon; enlarged prostate; hearing loss in the left ear; cataracts; Fuch's dystrophy, which is progressive degeneration of the cornea;

chronic bronchitis; chronic prostatitis; hemorrhagic gastritis; acid reflux; ocular migraine; and bleeding ulcer.   (Tr. at 203).

The ALJ failed to examine how the Plaintiff's hydrocephalus may affect his ability to exert himself physically.   The ALJ adopted Dr. Jonas's opinion that the hydrocephalus is "asymptomatic" despite four shunt replacement operations that Mr. Tobler underwent between 1999 and 2004, nor plaintiff's testimony that he could lift no more than five pounds without danger of displacing the shunt.   The ALJ did not discuss the years of treatment Mr. Tobler received at Cardiovascular Associates (CVA). Treatment notes from CVA indicate that the Plaintiff consistently complained of chest pain and chronic daytime fatigue.   As recently as May 2010, Mr. Tobler was being treated at CVA for heart palpitations and atypical chest pain.   (Tr. at 963).

The ALJ also failed to mention the Plaintiff's records at Montclair Rheumatology for arthritis pain and with Dr. Nicholas Braswell for urology issues.     A gastroenterologist, Dr. Subhash Bajaj, treated Mr. Tobler from 2003 into 2008, but the ALJ did not mention any of his findings.   The ALJ also did not address Dr. Kahn's report dated December 30, 2009, stating that Mr. Tobler tires easily due to a heart arrhythmia, cannot lift due to increased intracerebral pressure caused by his hydrocephalus, and that lumbar stenosis makes Mr. Tobler unable to walk.   (Tr. at 829).   The ALJ also did not consider the several years of treatment Mr. Tobler received from Dr. Stephen Favrot for his left-side hearing loss "presumably related to

hydrocephalus."   (Tr. at 554).   From 2001 to 2009, Mr. Tobler went from being able to hear things as quiet as 45 decibels in his left ear to being able to hear things only as quiet as 60 to 65 decibels.   (Tr. at 893, 947).

Other than a somatoform disorder, the ALJ did not discuss to what degree any of the claimed impairments were to be considered severe, leading the court to believe that the ALJ determined that none of the claimed issues imposed any impairment.   This court is not at liberty to re-weigh the evidence and determine which, if any, of the above impairments are severe, non-severe, or not impairments.   However, because there are diagnoses and varying levels of treatment in the record for the claimed impairments, the ALJ must assign an impairment level to them, based on the evidence in the record. The ALJ may well find that none of the claimed impairments actually create any impairment – severe or otherwise, but if he does so, he must explain why. That determination as well must be supported by substantial evidence.

C. Onset Date

The Plaintiff originally claimed that his disability onset date was June 10, 1998, the date on which his hydrocephalus was diagnosed.   At the first ALJ hearing in June 2011, the ALJ stated:

> ALJ: Okay.   Well, you alleged disability when you were 39 in '98, which -- we really can't go back that far.   We could, but you wouldn't get any money anyway.   It was filed 4/06/2009.   Do you want to amend it to something that would be at least relevant?

ATTY: Your honor --- yeah, your honor, I'm looking at his earnings record.   And what -- according to my notes, the date he last worked was sometime in February 2008, and that's about when they taper -- when the earnings taper off.

ALJ: Do you have SGA at 2008?

VE: February 28th, 2009.

ALJ: I mean, do you have it for calendar year 2008?

VE: Your honor, I'm pulling that up now.

ALJ: All righty.

. . .

VE: Your honor, the last date employed I show is 2/28/09.

ATTY: Okay.   Okay.   Then if Mr. Tobler is amenable to that, we'll go with that as your onset date, if that's the date - -

CLMT: That's fine.

(Tr. at 63-64).   That the Plaintiff would not be eligible to collect benefits back to his alleged onset date does not necessitate amendment of the alleged onset date.   If Mr. Tobler began having symptoms relating to his current claim of disability in 1998, the ALJ's opinion should reflect a study of the record beginning at the start of his symptoms.   It appears that the ALJ began his examination of the medical records in 2007, as the ALJ does not mention any earlier medical records.   At least one of the Plaintiff's alleged impairments has existed since 1998, and several other medical records

17

reflect treatment for a much longer time-frame than is discussed in the ALJ's opinion. In order to develop a true picture of the severity, longitude, and progress of the Plaintiff's impairments, it is necessary to scrutinize the entire record, from the onset of the alleged impairments to the date of the ALJ's decision.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Tobler's arguments, the Court finds that the Commissioner's decision is not supported by substantial evidence and is not in accord with the applicable law. Accordingly, it is hereby ORDERED that the Commissioner's determination that the plaintiff is not entitled to DIB is VACATED and REMANDED to the Agency to review Mr. Tobler's claim in light of the entire record.   An order of final judgment will be entered contemporaneously herewith.

DONE this 20th day of August, 2014.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE